Ludwig v IMI Fabi LLC (2025 NY Slip Op 51496(U))

[*1]

Ludwig v IMI Fabi LLC

2025 NY Slip Op 51496(U)

Decided on September 23, 2025

Supreme Court, Niagara County

Walter, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 23, 2025
Supreme Court, Niagara County

Craig Ludwig, et al., Plaintiffs,

against
IMI Fabi LLC, et al., Defendants.

Index No. E187366/2025

Shaina Weissman, Esq.
Simon Greenstone Panatier, PC
John P. Comerford, Esq. 
Lipsitz &Ponterio & Comerford LLC
Attorneys for Plaintiff
Joseph R. Connelly, III, Esq.
Peter Adolf, Esq.
Womble Bond Dickinson (US) LLP
Attorneys for Defendant
IMI Fabi LLC 

Raymond W. Walter, J.

This matter comes before the Court on Defendant IMI Fabi LLC's ("Fabi") motion to dismiss for lack of personal jurisdiction pursuant to CPLR 3211(a)(8). Plaintiffs oppose the motion, contending that Fabi is at home in New York and has engaged in sufficient business transactions and purposeful conduct directed toward New York to confer general and specific jurisdiction under CPLR 301 and 302.
Having reviewed the submissions of the parties, specifically New York State Courts Electronic Filing ("NYSCEF") Document Numbers 141 — 145 and 238 — 308, which include the deposition testimony of corporate representatives, distributor agreements, shipping records, and relevant precedent, and having heard oral arguments on September 15, 2025, the Court denies the motion for the following reasons.
The facts underlying this matter are largely undisputed. Fabi is organized outside of New York, with its principal operations located in West Virginia. It is not incorporated in New York and has no registered office, employees, or bank accounts in this State. Nevertheless, the record reflects that Fabi is part of a global enterprise producing talc for use in cosmetics, pharmaceuticals, and industrial applications.
For many years, IMI Fabi (Diana) LLC ("Diana") operated a talc facility in Natural Bridge (Diana), New York. The Diana plant produced cosmetic and industrial grade talc beginning in the late 1990s. In 2001, Diana entered into an exclusive Distributor Agreement with Cosmetic Specialties, Inc. ("CSI"), a New Jersey distributor, appointing CSI as the primary distributor of Fabi's cosmetic talc products in the United States and prohibiting it from handling competing talc lines (NYSCEF Doc No 260). In 2020, corporate restructuring formally merged the Diana entity into Fabi (NYSCEF Doc No 247).
The evidentiary record includes bills of lading and invoices showing shipments of Fabi talc directly into New York ports (NYSCEF Doc No 290) and deliveries to Rouses Point, New York between 2015 and 2020 (NYSCEF Doc No 286). Correspondence confirms Estee Lauder in New York as a direct customer of Fabi talc (NYSCEF Doc No 287), while Chanel's raw material specifications identified talc manufactured at the Diana facility (NYSCEF Doc No 277). Avon similarly approved talc formulations incorporating Fabi material (NYSCEF Doc No 288).
Plaintiffs allege exposure in New York to cosmetics and consumer products containing Fabi talc and bring this action seeking to hold the company answerable in this forum.
CPLR 301, subjects a corporation to general jurisdiction only where it is "at home," namely in its state of incorporation or principal place of business, absent exceptional circumstances (Daimler AG v Bauman, 571 US 117, 137 [2014]; Aybar v Aybar, 37 NY3d 274, 289 [2021]). Defendant urges that it is not "at home" in New York under Daimler and Aybar, in which both the United States Supreme Court and the New York Court of Appeals reiterated that general jurisdiction over a corporate defendant lies only in its state of incorporation or principal place of business, absent exceptional circumstances. This Court agrees. Fabi is neither incorporated nor headquartered in New York. The mere fact that Fabi operated a cosmetic talc facility in Diana, New York, from 1997 through 2004 does not render the company "essentially at home" in this State in 2025, particularly given the Supreme Court's strict limitations in Daimler. Plaintiffs, therefore, cannot establish general jurisdiction under CPLR 301.
The question turns to whether Plaintiffs may establish specific jurisdiction pursuant to CPLR 302. Plaintiffs argue that Fabi "transacted business" in New York within the meaning of CPLR 302(a)(1) and committed tortious acts outside the State causing injury within New York under CPLR 302(a)(3). The record supports both theories.
In Volkswagenwerk Aktiengesellschaft v Beech Aircraft Corp., (751 F2d 117 [2d Cir1984]), the Second Circuit explained that jurisdiction over a foreign entity may be exercised if its in-state affiliate is so dominated and controlled that it is a "mere department" of the foreign entity. Courts consider four factors: (1) common ownership, (2) financial dependency, (3) interference with personnel and disregard of corporate formalities, and (4) control of marketing and operations. The ultimate inquiry is whether "the local corporation's existence is simply a formality," such that it is fair to attribute its New York contacts to the foreign company (id.).
Both Diana and Fabi are (or were) part of the IMI Fabi group of entities. The sustainability report (NYSCEF Doc No 298) describes IMI Fabi as a unified multinational enterprise. Both entities shared common ownership within the IMI Fabi multinational group. The record shows substantial overlap in executive leadership, with Corrado Fabi and Scott Baker having both testified as corporate representatives for "IMI Fabi LLC, IMI Fabi (Diana) LLC, and IMI Fabi USA Inc.," confirming overlapping management (NYSCEF Doc No 254, 280, 306). Financial records and distributor agreements demonstrate that Diana did not operate independently but as a U.S. production arm within the Fabi supply chain. Marketing and [*2]distribution were not locally controlled. The distributor agreement (NYSCEF Doc No 260) tied Diana's cosmetic talc production to CSI's exclusive national distribution network, ensuring that sales strategy and market penetration were directed by Fabi as a whole.
Applying the Volkswagenwerk framework, there is substantial evidence that Diana was a "mere department" of Fabi. The entities had common ownership, shared officers and representatives, were financially interdependent, and operated under coordinated marketing and distribution strategies. Although Diana ceased to exist as a separate entity after the 2020 merger, its prior activities in New York were undertaken on behalf of the same unified enterprise. Accordingly, the Court concludes that Fabi's New York contacts, including the operation of the Diana facility and contracts with CSI, are attributable to Fabi for purposes of specific jurisdiction (see Volkswagenwerk, 751 F2d at 120—22; see also Jazini v. Nissan Motor Co., 148 F3d 181 [2d Cir 1998][distinguishing cases but reaffirming the "mere department" test]).
This Court emphasizes that attribution of Diana's contacts to Fabi is confined to the analysis under CPLR 302 and does not expand the limited reach of CPLR 301 after Daimler and Aybar.
CPLR 302(a)(1) allows jurisdiction where a defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." Diana, acting as a mere department of Fabi, contracted with CSI to distribute its talc nationwide, knowing that CSI sold to Estee Lauder, Chanel, and Avon which are all headquartered in New York (NYSCEF Doc Nos 260, 277, 287, 288). Invoices and import records further demonstrate that talc was shipped directly into New York (NYSCEF Doc Nos 286, 290). This constitutes purposeful availment of the New York market, satisfying CPLR 302(a)(1). (See LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 214—15 [2000]).
CPLR 302(a)(3) authorizes jurisdiction over a defendant who commits a tortious act outside New York causing injury within the State, provided either i) the defendant regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed in New York; or, ii) the defendant expects or should reasonably expect the act to have consequences in New York and derives substantial revenue from interstate or international commerce. Plaintiffs allege that Fabi's manufacture and distribution of asbestos-containing talc outside New York caused injury to the Plaintiffs in New York.
Plaintiffs claim that Fabi committed a tortious act outside New York by selling a defective product and failing to warn of foreseeable harms. The Diana, NY facility ceased cosmetic talc production by 2004, so most relevant conduct occurred outside New York, such as mining, milling, and packaging at the Benwood, WV facilities or internationally. Plaintiffs also allege that they used products containing Fabi talc while living in New York and suffered asbestos-related disease here. For example, Avon specifications (NYSCEF Doc No 288), Procter & Gamble (Cover Girl) formula card (NYSCEF Doc No 272), Procter & Gamble certificate of analysis (NYSCEF Doc No 267), and Chanel raw material cards (NYSCEF Doc No 277) show Fabi talc was an ingredient in cosmetics sold to New York consumers. Estee Lauder correspondence (NYSCEF Doc No 287) confirms cosmetic talc was marketed to a New York-based company and import records show talc shipments arriving directly at the Port of New York (NYSCEF Doc No 290). Thus, subsection (a)(3) squarely applies because the alleged wrongful acts happened elsewhere, but the alleged harm occurred in New York.
Subsection (i) is satisfied because Fabi regularly engaged in a persistent course of conduct in New York. The 2001 and 2004 Distributor Agreements between Fabi and CSI [*3]appointed CSI as its primary distributor of cosmetic-grade talc throughout the United States and specifically in New York (NYSCEF Doc No 259 and 260). Although Defendant stresses that sales were technically FOB West Virginia and title passed before entry into New York, the agreement went beyond a mere sale of goods. The agreement created an ongoing relationship that restricted CSI from handling competitors' talc products and obligated it to market Fabi's talc in the U.S. cosmetic market. This arrangement demonstrates that CSI acted not simply as an independent purchaser but as an agent through which Fabi purposefully availed itself of the benefits of the New York marketplace.
The record further establishes that Fabi's talc products entered New York directly. Bills of lading show shipments of talc powder consigned to Fabi that arrived at the Port of New York in November 2021 (NYSCEF Doc No 290). Shipping records and invoices from 2015 through 2020 confirm deliveries of Fabi talc into Rouses Point, New York, for cosmetic manufacturers (NYSCEF Doc No 286). Additional correspondence demonstrates that Estee Lauder, headquartered in New York, was a customer of Fabi talc as early as 2002 (NYSCEF Doc No 287). Chanel's raw material specifications likewise list talc produced at the Diana facility and distributed by CSI (NYSCEF Doc No 277).
Taken together, these documents show that Fabi not only contracted to supply goods in New York but also foresaw that its products would reach this State's marketplace and be incorporated into consumer products sold here. The evidence demonstrates a persistent course of conduct and derivation of revenue from goods ultimately consumed in New York. That is enough to satisfy CPLR 302(a)(3)(i).
Subsection (ii) is likewise satisfied because Fabi reasonably should have expected its acts to have consequences in New York, given its deliberate marketing to Estee Lauder, Chanel, and Avon. It also derived substantial revenue from interstate and international commerce. The Court of Appeals in LaMarca v Pak-Mor Mfg. Co., (95 NY2d 210 [2000]), held that jurisdiction is proper where a manufacturer should have reasonably expected its products would be used in New York, even if sale and title passed elsewhere. There, the Court held that a Texas manufacturer was subject to personal jurisdiction in New York where its invoices revealed that equipment was destined for this State, reasoning that a defendant "need not foresee the specific event that produced the alleged injury; rather, it need only reasonably foresee that any defect in its product would have direct consequences within the State" (id. at 215—16). Given CSI's relationships with New York companies, and Fabi's knowledge of the same, (e.g., Avon, Estee Lauder, Chanel), Fabi reasonably should have expected its talc would reach this forum. Fabi is also a multinational talc producer with facilities in the U.S. and Europe, shipping tens of thousands of tons into the U.S. (NYSCEF Doc Nos 273, 290). This far exceeds the "local" businesses excluded from the statute (see Ingraham v Carroll, 90 NY2d 592, 597-598 [1997]). LaMarca emphasized that when a company profits substantially from national commerce, jurisdiction in New York is consistent with the statute (95 NY2d at 216). Thus, subsection (a)(3)(ii) is also satisfied.
Even when the long-arm statute is satisfied, the exercise of jurisdiction must comport with due process. Constitutional due process is satisfied where a defendant has "minimum contacts" with the forum and the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice" (International Shoe Co. v Washington, 326 US 310, 316 [1945]). The United States Supreme Court's decision in Ford Motor Co. v Montana Eighth Judicial District Court, (592 US 351, 365-367 [2021]), confirms that a defendant who [*4]systematically serves a state's market can be haled into its courts even if the specific product causing injury was first sold elsewhere.
Fabi relies on J. McIntyre Machinery, Ltd. v Nicastro, (564 US 873 [2011]), and the recent decision of the Texas Supreme Court in BRP-Rotax GmbH v Shaik, (716 SW3d 98 [Tex 2025]), to argue that Plaintiffs cannot establish jurisdiction merely because a product reached the forum through the stream of commerce. Those cases are distinguishable. In Nicastro, the English manufacturer sold its products to an independent distributor in New Jersey without any showing of forum-directed conduct toward New Jersey. In Rotax, the Austrian manufacturer had no U.S. operations and used a Bahamian distributor that lacked any U.S. presence. Unlike the defendants in Nicastro and Rotax, Fabi did not rely on a foreign distributor with no U.S. presence. Instead, it deliberately structured an exclusive distribution agreement with CSI, its controlled channel for U.S. sales, while also directly shipping into New York. The record also shows that Fabi marketed talc directly to Estee Lauder, Chanel, and Avon which are New York-based cosmetic companies. Moreover, import records show direct shipment of talc into the Port of New York.
These facts, which are absent in Nicastro and Rotax, bring the case within the reasoning of Ford where jurisdiction was proper because the defendant systematically served the forum market (592 US at 367-368). LaMarca v Pak-Mor Mfg., is instructive here. Like the Defendant in LaMarca, Fabi "forged the ties with New York. It took purposeful action, motivated by the entirely understandable wish to sell its products here" (95 NY2d at 217). The record, therefore, establishes that Fabi's actions satisfy the International Shoe "minimum contacts" standard.
Minimum contacts alone, however, do not satisfy due process. The prospect of defending a suit in the forum State must also comport with traditional notions of "fair play and substantial justice" (LaMarca at 217-218 [citing Burger King Corp. v Rudzewicz, 471 US 462, 477-478 [1985]). "A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies" (Asahi Metal Industry Co. Ltd. v Superior Court of California, Solano County, 480 US 102, 113 [1987]).
As in LaMarca, Fabi "is a United States corporation fully familiar with this country's legal system. Moreover, New York has an interest in providing a convenient forum for" the Plaintiffs in the instant case, "a New York resident who was injured in New York and may be entitled to relief under New York law" (95 NY2d at 218). "Finally, it would be orderly to allow plaintiff to sue all named defendants in New York. A single action would promote the interstate judicial system's shared interests in obtaining the most efficient resolution of the controversy (id. at 219). Paraphrasing the Court of Appeals in LaMarca, fair play and substantial justice requires a "set of corresponding rights and obligation." A company with Fabi's resources and reach derives profits from sales in New York and it is not unfair to "render it judicially answerable for its actions in this state." In short, Fabi's commercial reach deliberately extended into New York, and due process requires that it be answerable here. The assertion of jurisdiction is both fair and consistent with the Constitution. (Id. at 219).
Considering the totality of the record, the Court concludes that while Fabi is not subject to general jurisdiction in New York, Plaintiffs have established specific jurisdiction under CPLR 302(a)(1) and 302(a)(3). Fabi purposefully transacted business in New York through its distributor CSI and through direct shipments into the State. It reasonably should have expected [*5]its conduct to have consequences in New York, and it derives substantial revenue from interstate and international commerce. The exercise of jurisdiction comports with due process as articulated in International Shoe, Burger King Corp., and Ford Motor Co., and it is consistent with New York precedent such as LaMarca.
Accordingly, it is hereby
ORDERED that Defendant IMI Fabi LLC's motion to dismiss for lack of personal jurisdiction is DENIED in its entirety.
Dated: September 23, 2025
Buffalo, New York
Raymond W. Walter, J.S.C.